UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br><br>PLAINTIFF,<br><br>-AGAINST-<br><br>JUAN PEREZ, INDIVIDUALLY AND D/B/A 40/40 CLUB; KRYSTIAN SANTINI, INDIVIDUALLY AND D/B/A 40/40 CLUB; AND TWENTY ONES INCORPORATED, AN UNKNOWN BUSINESS ENTITY D/B/A 40/40 CLUB,<br><br>DEFENDANTS. | Case No. 1:21-cv-06210-KPF<br><br>Hon. Katherine Polk Failla |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**


Dated: September 27, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Alex Spiro
Paul B. Maslo
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
alexspiro@quinnemanuel.com
paulmaslo@quinnemanuel.com

*Attorneys for Defendants*

<mark>Case 1:21-cv-06210-KPF   Document 65   Filed 09/27/22   Page 2 of 15</mark>

## **TABLE OF CONTENTS**

## **TABLE OF CONTENTS**

**Page**

Introduction ...........................................................................................................................1

Argument ...............................................................................................................................1

    I.      G&G Fails to Create a Genuine Dispute as to Standing..........................................1

    II.     G&G Fails to Present Admissible Evidence Showing How the Program was Broadcast ...........................................................................................................6

    III.    G&G Fails to Rebut the 40/40 Club's Showing that the Broadcast was Authorized..........................................................................................................8

    IV.    G&G Fails to Create a Genuine Dispute as to Vicarious Liability.........................9

Conclusion..........................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abraham v. Leigh*,
   471 F. Supp. 3d 540 (S.D.N.Y. 2020) .................................................................................... 7

*Coniber v. Ctr. Point Transfer Station, Inc.*,
   27 N.Y.S.3d 763 (2016) ........................................................................................................ 5

*Deebs v. Alstom Transp., Inc.*,
   346 F. App'x 654 (2d Cir. 2009) ........................................................................................... 7

*DiStiso v. Cook*,
   691 F.3d 226 (2d Cir. 2012) .................................................................................................. 7

*Edwards v. Poulmentis*,
   763 N.Y.S.2d 677 (2003) ...................................................................................................... 2

*Faulkner v. Nat'l Geographic Soc.*,
   452 F. Supp. 2d 369 (S.D.N.Y. 2006) ............................................................................... 4, 5

*G & G Closed Circuit Events, LLC v. California Center for the Arts, Escondido, Foundation*,
   2022 WL 598059 (S.D. Cal. Feb. 28, 2022) ......................................................................... 3

*G & G Closed Circuit Events, LLC v. Gonzalez*,
   Case No. 18-cv-02843-PHX-SMB, Dkt. No. 44 (D. Ariz. Feb. 21, 2020) ............................ 2

*J & J Sports Prods., Inc. v. Bailey*,
   2016 WL 6648638 (E.D. Cal. Nov. 9, 2016) ........................................................................ 6

*J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc.*,
   2017 WL 933079 (E.D.N.Y. Mar. 8, 2017) ..................................................................... 9, 10

*J & J Sports Prods., Inc. v. Usman*,
   2019 WL 6777387 (E.D.N.Y. Dec. 12, 2019) ....................................................................... 9

*J & J Sports Prods., Inc. v. Vergara*,
   2020 WL 1034393 (E.D.N.Y. Feb. 6, 2020),
   *report and recommendation adopted*, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020) ............ 4

*Joe Hand Promotions, Inc. v. Alvarado*,
   2011 WL 1740536 (E.D. Cal. May 4, 2011) ....................................................................... 10

*Joe Hand Promotions, Inc. v. Cusi*,
   2014 WL 1921760 (S.D. Cal. May 14, 2014) ....................................................................... 6

*Joe Hand Promotions, Inc. v. KSD, Inc.*,
   2014 WL 2882917 (N.D. Ohio June 25, 2014) ..................................................................... 1

*G & G Closed Circuit Events, LLC v. Liu*,
   2022 WL 3582698 (9th Cir. Aug. 22, 2022) ...................................................................... 7, 8

*In re Porter's Estate*,
  142 N.Y.S.2d 787 (1955) ............................................................................................. 1

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
  118 F.3d 955 (2d Cir. 1997) ..................................................................................... 10

*Williams v. Romarm*,
  751 F. App'x 20 (2d Cir. 2018) .................................................................................. 6

**Statutory Authorities**

47 U.S.C. § 605 ................................................................................................................. 1
47 U.S.C. § 553 ................................................................................................................. 1

**Rules and Regulations**

Fed. R. Civ. P. 56 .............................................................................................................. 7
Fed. R. Evid. 602 .............................................................................................................. 7

Defendants Juan Perez, Krystian Santini (collectively, the "Individual Defendants"), and Twenty Ones, Inc. (the "40/40 Club") submit this reply in support of their motion for summary judgment on the claims of Plaintiff G & G Closed Circuit Events, LLC ("G&G").

## INTRODUCTION

In their opening brief, Defendants demonstrated that there is no basis in law or fact for G&G's anti-piracy claims based on the 40/40 Club's broadcast of the Saul Alvarez v. Sergey Kovalev fight (the "Program"). G&G's opposition, which relies on incompetent and inadmissible evidence, fails to give rise to any genuine disputes of material fact. The Court should therefore grant summary judgment in Defendants' favor.

## ARGUMENT

### I. G&G FAILS TO CREATE A GENUINE DISPUTE AS TO STANDING

Defendants demonstrated that G&G is not a "person aggrieved," and thus lacks standing, because its right to pursue the claims here reverted to DAZN when the 2019 MSA terminated on December 19, 2019. (Mot. at 8.) G&G's arguments to the contrary are wrong.

*First*, G&G asserts that Defendants are unable to raise their standing argument because they are not a third-party beneficiaries to the 2019 MSA and cannot "challenge" the agreement. (Opp. at 4-5.) Nonsense. Defendants' argument is that G&G is not a "person aggrieved," as required by the relevant statutes, and thus lacks standing. *See, e.g.*, *Joe Hand Promotions, Inc. v. KSD, Inc.*, 2014 WL 2882917, at *3 (N.D. Ohio June 25, 2014) (citing 47 U.S.C. §§ 605(d)(6), 553(c)(1)). Defendants do not seek to "challenge" (Opp. at 4) or "enforce" the 2019 MSA as a third-party beneficiary, *In re Porter's Estate*, 142 N.Y.S. 2d 787, 789 (1955) (Opp. at 4).

*Second*, G&G errs in arguing that Defendants must "establish that DAZN agrees with their position" regarding G&G's lack of standing. (Opp. at 5.) When, as here, "the provisions of a contract are clear and unambiguous and the intent of the parties can be gleaned from the four

corners of the document, a court should interpret the contract in accordance with its plain and ordinary meaning." *Edwards v. Poulmentis*, 763 N.Y.S.2d 677, 679 (2003). And, as Defendants demonstrated (Mot. at 8-11), the 2019 MSA plainly and unambiguously provides that "all rights licensed or otherwise transferred to [G&G]," including the right to "prosecute any and all acts of alleged piracy," "cease[d] and revert[ed] to [DAZN]" when the 2019 MSA terminated on December 31, 2019 (DSOMF ¶¶ 48-51).[1]

*Third*, G&G's argument that Statement of Work ("SOW") 4 extended the 2019 MSA fails as a matter of law. (Opp. at 6.) Although SOW 4 provides that "[a]dditional boxing events scheduled to be broadcasted on DAZN prior to January 30[,] 2020, including, but not limited to, potential bouts on December 14th and December 21st … may be offered by G&G as an 'Event Package' upon DAZN's approval" (Dkt. No. 53-6 at 2), there is no evidence that G&G offered any such events, under SOW 4, after the 2019 MSA terminated on December 31, 2019. To the contrary, G&G and DAZN entered into a new Master Services Agreement with an "Effective Date" of January 16, 2020. (DSOMF ¶ 51.) Thus, there is no evidence that SOW 4 extended the 2019 MSA past December 31, 2019.

Additionally, even if SOW 4 somehow did extend the 2019 MSA, there is no evidence that SOW 4 extended it past January 30, 2020—which was contemplated as the last date on which

---

[1] G&G cites *G & G Closed Circuit Events, LLC v. Gonzalez*, Case No. 18-cv-02843-PHX-SMB, Dkt. No. 44 (D. Ariz. Feb. 21, 2020) (Opp. at 5) (located at Dkt. No. 54-1). But, as G&G concedes, that case involved a "different specific argument" (Opp. at 5), namely, defendants "dispute[d] Plaintiff's nationwide enforcement rights, arguing the Licensing Agreement requires the Plaintiff act jointly with the Promoter in any enforcement action" (Dkt. No. 54-1 at 6). Notably, that argument was foreclosed by the plain language of the agreement, which provided that "Licensee shall have the right to identify and prosecute as may be necessary all acts of alleged piracy of the Event." (*Id.* at 7.) The plain language in the 2019 MSA is different: it says that G&G "shall be afforded all necessary remedies … in the prosecution of piracy and infringement claims involving the Boxing Events," "[s]ubject to DAZN's written consent." (DSOMF ¶ 48.) And there is no evidence G&G received "DAZN's written consent." (*Id.*)

2

additional boxing events could "be broadcasted on DAZN" and "offered by G&G as an 'Event Package' upon DAZN's approval." (Dkt. No. 53-6 at 2.) And there certainly is no evidence that G&G and DAZN agreed to extend the 2019 MSA until July 21, 2021, the date on which G&G filed this lawsuit. (*See* Dkt. No. 1.)[2]

*Fourth*, although the plain language of the 2019 MSA is dispositive, G&G fails to show that its rights under the 2019 MSA were not also extinguished by the merger clause in the 2020 MSA. G&G argues that the 2019 MSA and the 2020 MSA address different "subject matter" (Opp. at 7-9), but that is disproved by the agreements themselves. Both agreements address G&G's right to sublicense DAZN events to commercial establishments. (*See* Dkt. No. 53-5 at 2 [2019 MSA]; Dkt No. 53-7 at 2 [2020 MSA].) And had G&G and DAZN intended to preserve their rights and obligations under the 2019 MSA, they would have extended *that* agreement rather than allowing it to lapse and entering into a *new* agreement that "supersede[d] and terminate[d] all prior agreements between [them] and their affiliates with respect to the subject matter [t]herein." (Def. SOMF ¶ 52.) Thus, the merger clause in the 2020 MSA confirms that G&G lacks rights to assert piracy claims based on the 2019 MSA.

G&G is also mistaken that enforcing the merger clause in the 2020 MSA would "undermine[] the purpose of the contract[s] at issue." (Opp. at 9.) That argument assumes that the

---

[2] G&G relies on *G & G Closed Circuit Events, LLC v. California Center for the Arts, Escondido, Foundation*, 2022 WL 598059, at *4 (S.D. Cal. Feb. 28, 2022), to argue that G&G and DAZN extended the 2019 MSA. (Opp. at 7.) Although the court there stated that "[G&G] ha[d] submitted evidence that an amendment to the [2019 MSA] … preserved [G&G's] rights," *id.*, the court did not specifically identify the evidence on which it relied and instead cited to a page of G&G's opposition, as G&G acknowledges (Opp. at 7 n.5). Nor did the court explain how that "evidence" showed that G&G and DAZN preserved G&G's rights under the 2019 MSA in a way that allowed G&G to prosecute claims against defendants. To the extent the court relied on SOW 4, as G&G suggests (*see id.*), that reasoning was erroneous for the reasons set forth above, including that SOW 4 did not, by its terms, extend the 2019 MSA.

purpose of the 2019 MSA was to give G&G broad rights to pursue piracy claims after its termination. But, as explained above, the plain language of the 2019 MSA shows that G&G and DAZN intended that G&G's right to "prosecute any and all acts of alleged piracy" would "cease and revert to [DAZN]" when the 2019 MSA terminated. (DSOMF ¶¶ 48-51.) *See, e.g.*, *J&J Sports Prods., Inc. v. Vergara*, 2020 WL 1034393, at *10 (E.D.N.Y. Feb. 6, 2020), *report and recommendation adopted*, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020) (noting that the "clear and unambiguous language" of the licensing agreement "indicates that the parties intended for J&J's right to sue under Section 605 for unlawful interception and broadcast of the Program to terminate upon the termination of the license agreement" and "[t]o find otherwise would confer J&J w[ith] a perpetual right to sue for unlawful interception and broadcast of the Program"). !

*Fifth*, G&G lacks support for its argument that G&G and DAZN extended the 2019 MSA through their "course of conduct." (Opp. at 9.) G&G asserts that "the parties to the [2019] MSA have developed a course of conduct by which it is clearly confirmed that the agreement has been extended beyond the original termination." (*Id.*) But G&G does not present any *admissible evidence* to establish this course of conduct. For example, G&G has no evidence that DAZN authorized the filing of lawsuits for boxing events covered by the 2019 MSA after the agreement terminated in December 2019. Instead, G&G merely cites to a declaration from its president that asserts the legal conclusions that (1) "G & G … and DAZN have developed a course of conduct by which it is clearly confirmed and understood that the MSA has been extended beyond any original termination date," and (2) "[t]hese extensions include the ability to pursue litigation arising out of violations of events covered by the May 1, 2019 MSA." (Dkt. No. 57 at 2 ¶ 7.) These "legal conclusions," which do not identify any facts establishing a course of conduct, "are inadmissible and may not be considered on a motion for summary judgment." *Faulkner v. Nat'l*

4

*Geographic Soc.*, 452 F. Supp. 2d 369, 379 (S.D.N.Y. 2006).[3]

*Finally*, G&G likewise lacks support for its assertion that "the requirement of advanced written notice/written approval in [Section 8(b) of the 2019 MSA]" was "waived by the parties['] course of conduct." (Opp. at 9.) But "[w]aiver is 'the voluntary and intentional relinquishment of a contract right,'" and "it 'cannot be inferred from mere silence.'" *Coniber v. Ctr. Point Transfer Station, Inc.*, 27 N.Y.S.3d 763, 767 (2016). Yet, G&G relies on DAZN's "mere silence" to argue for waiver. For example, G&G's president asserts that "DAZN has never objected or otherwise questioned the course of conduct the parties have adopted, including the method by which the MSA has been extended, and G&G … has relied upon this course of conduct[.]" (Dkt. No. 57 at 2 ¶ 8.) He also asserts that "a custom and course of conduct developed … whereby it was intended, understood, and agreed that G&G … would pursue all piracy claims independently." (*Id.* at 2-3 ¶ 9.) Even if these unsupported legal conclusions were admissible, and they are not, *see, e.g.*, *Faulkner*, 452 F. Supp. 2d at 379, they show "mere silence" on the part of DAZN, rather than affirmative conduct that could establish waiver.

G&G's waiver argument is also foreclosed by Section 19 of the Standard Terms & Conditions (the "no oral modifications" clause), which states that the 2019 MSA "cannot be modified except by a written instrument signed by all parties hereto." (Dkt. No. 53-5 at 22 § 19.) G&G did not present any evidence or argument that DAZN waived that specific provision. Nor did G&G address the provision in its opposition, thus waiving the right to do so. *See, e.g.*, *Williams*

---

[3] G&G misplaces reliance on *J&J Sports Productions, Inc. v. KSD, Inc.*, Case No. 3:12-cv-01873-VKA (Dkt. No. 54-3), because the plaintiff in that case submitted two declarations—one from the licensee and one from the licensor—stating "that custom dictated that Plaintiff would pursue all piracy claims independently and it was not intended that each party participate in any piracy action." (Dkt No. 54-3 at 2.) Here, by contrast, G&G has no evidence from DAZN, much less a declaration from DAZN stating that G&G can, contrary to the 2019 MSA, pursue piracy claims after the termination of the 2019 MSA and without DAZN's written consent.

*v. Romarm*, 751 F. App'x 20, 23 (2d Cir. 2018). And G&G did not introduce a written instrument signed by the parties.

## II.   G&G FAILS TO PRESENT ADMISSIBLE EVIDENCE SHOWING HOW THE PROGRAM WAS BROADCAST

Defendants demonstrated that neither statute applies because G&G did not "come forward with some evidence as to whether the alleged violation was a radio[/satellite] communication or a cable communication." (Mot. at 11 (quoting *J & J Sports Prods., Inc. v. Bailey*, 2016 WL 6648638, at *4 (E.D. Cal. Nov. 9, 2016).) G&G fails to cure this fatal defect.

G&G is incorrect that the 2019 MSA shows that the Program was broadcast via satellite. (*See* Opp. at 12-20.) On the contrary, section 5 of the 2019 MSA (Dkt. No. 53-5) clearly contemplates that a broadcast may be made via satellite, cable, *or* internet streaming:

> 5. **Equipment & Signal Transmission of the Telecast of Events.** Licensee and Licensee's sublicensees shall be responsible to obtain, at Licensee's or their cost and expenses, either:
>
>   a.  Authorization to receive the telecast of the Events through the services of one or more satellite ("DDS") programming providers such as DirecTv or DISH Network, to be selected by Licensee and approved by Promoter in writing in advance; or
>
>   b.  Authorization to receive the telecast of the Events through the services of one or more cable programming providers to be selected by Licensee and approved by Promoter in writing in advance; or
>
>   c.  Authorization to receive the telecast of the Events through the services of one or more alternate programming providers (such as streaming sites), to be selected by Licensee and approved by Promoter.

The bottom line is that G&G does not present any competent evidence rebutting the testimony of DAZN that it streamed the Program over the internet and that it was not accessible on satellite, cable, or radio. *See, e.g.*, *Joe Hand Promotions, Inc. v. Cusi*, 2014 WL 1921760, at *3 (S.D. Cal. May 14, 2014) (granting defendants' motion for summary judgment and noting that even if "the type of internet service [used could] determine[] whether liability exists under Sections 503 and 605," plaintiff "has failed to produce any evidence tending to demonstrate the type of internet used by Defendants"). Rather, G&G merely relies on a declaration from its president speculating that "the Program originate[d] via satellite uplink through Strategic." (ECF No. 57 at 1-2 ¶ 5.) But there is

6

nothing in the declaration establishing that G&G's president had personal, firsthand knowledge of this fact, and thus the statement is inadmissible. *See, e.g.*, *Abraham v. Leigh*, 471 F. Supp. 3d 540, 554-55 (S.D.N.Y. 2020) (Failla, J.) (ruling that "Plaintiff's declarations[, which] attempt to offer testimony about events of which the declarant had no direct knowledge," are "insufficient" at summary judgment) (citing *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge[.]"); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")); *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) ("self-serving[,] … speculative, and subjective[] testimony" is "insufficient" at summary judgment). And G&G presents no evidence from Strategic or DAZN regarding the broadcast of the Program, even though Defendants submitted a declaration from DAZN. That is no surprise because G&G conducted virtually no discovery in this case, despite arguing for and being granted an extension.

G&G also misleadingly asserts that the Ninth Circuit, in *G & G Closed Circuit Events, LLC v. Liu*, 2022 WL 3582698 (9th Cir. Aug. 22, 2022), "rejected" the argument that the statutes on which G&G relies do not cover internet broadcasts. (Opp. at 15.) The Ninth Circuit "decline[d]" to resolve that question and instead affirmed summary judgment against G&G on an alternative basis. Specifically, as in this case, "G&G failed to meet its burden on summary judgment to provide evidence sufficient to demonstrate a genuine issue of material fact regarding the method of transmission of the program at issue." *Id.* at *1. Like here, "G&G produced no evidence that would address whether the fight was relayed by way of a 'facility, consisting of a set of closed transmission paths' or 'provided to multiple subscribers within a community,' such that the fight could have been transmitted by way of a 'cable system' within the meaning of § 553." *Id.* at *3.

Like here, "G&G produced no witnesses or documents to explain whether [the] display of the program involved a 'transmission by radio of writing, signs, signals, pictures, and sounds of all kinds' or otherwise involved a satellite transmission as would be required to establish liability under § 605." *Id.* "And, [like here,] remarkably, G&G undertook no discovery about the nature of the transmission to or from … the entity from which [defendant] purchased the fight." *Id.*

That reasoning is spot on. This Court should follow *Liu* and grant summary judgment in Defendants' favor. *See id.* at *4.

### III. G&G FAILS TO REBUT THE 40/40 CLUB'S SHOWING THAT THE BROADCAST WAS AUTHORIZED

Defendants demonstrated that the 40/40 Club's broadcast of the Program was authorized because (1) G&G specifically directed the 40/40 Club to broadcast the Program through DAZN (but then forgot to invoice the 40/40 Club), and (2) the 40/40 Club had a valid subscription to DAZN, which specifically authorized the 40/40 Club to receive the Program. (Mot. at 15-17.) G&G fails to create a genuine dispute on either of these points.

G&G's assertion that it did not instruct the 40/40 Club to download the DAZN application and stream the Program through DAZN is wrong (*See* Opp. at 17.) Indeed, G&G sent the 40/40 Club an advertisement stating that the Program was available "only on DAZN." (Def. Rep. SOMF ¶ 24.) The 40/40 Club has purchased many fights from G&G both before and after the Program. (*See* Dkt. No. 57-1 at 2; Pl. Res. SOMF ¶ 32 (admitted).) It makes no sense that the 40/40 Club broadcasted the Program without clearing it through G&G. And although G&G claims that it had no "obligation to accept payment after the fact" (Opp. at 19 n.12), the parties' conduct shows, by G&G's admission, that the 40/40 Club had "ordered" and paid for other events after their broadcast (Opp. at 19 (citing Dkt. No. 57-1 at 2)). G&G should have simply accepted payment from the 40/40 Club when the non-payment issue came to light, rather than filing this trumped-up lawsuit.

8

In any event, even if G&G's implausible evidence has created a dispute as to whether G&G authorized the 40/40 Club's broadcast, the broadcast was independently authorized by DAZN because the 40/40 Club had a valid subscription to DAZN. G&G complains that DAZN should not have allowed the 40/40 Club to stream the Program because "G&G had the exclusive commercial distribution rights." (Opp. at 20.) But, whether right or not, DAZN allowed the 40/40 Club to stream the Program. And G&G's complaint thus lies with DAZN, not Defendants.

### IV. G&G FAILS TO CREATE A GENUINE DISPUTE AS TO VICARIOUS LIABILITY

The Individual Defendants, minority shareholders in the 40/40 Club (DSOMF ¶ 38), demonstrated that G&G cannot hold them contributorily or vicariously liable. (Mot. at 17-21.) G&G concedes that it cannot establish contributorily liable. (Opp. at 3 n.2.) And G&G's arguments regarding vicarious liability lack any basis in law or fact.

The cases on which G&G relies confirm that vicarious liability exists only if "the individual [1] had a right and ability to supervise the infringing activities and [2] had an obvious and direct financial interest in the exploitation of [the] copyrighted materials." *J & J Sports Prods., Inc. v. Usman*, 2019 WL 6777387, at *2 (E.D.N.Y. Dec. 12, 2019) (Opp. at 23); *see also J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc.*, 2017 WL 933079, at *3 (E.D.N.Y. Mar. 8, 2017) (vicarious liability requires a showing that an individual "had a right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials"). But G&G is unable to create a genuine dispute of material fact as to either element.

The Individual Defendants' presented unrebutted evidence as to both elements in their opening brief. (Mot. at 16-18.) There is no genuine dispute that the Individual Defendants "did not have the right to supervise the broadcasting of the Program—or any other broadcast—because they do not have any managerial responsibility for overseeing the 40/40 Club and are not involved in the day-to-day activities of the 40/40 Club"; "did not have the ability to supervise the

9

broadcasting of the Program because they never held a [functional] position[4] at the 40/40 Club are were not at the 40/40 Club when it was shown"; and "did not have any financial interest in the broadcasting of the Program because they made no money and did not profit from the broadcast in any way." (Def. Rep. SOMF ¶¶ 41-43.)

The only evidence G&G cites on these points is the 40/40 Club's Division of Corporations filing, which lists one of the Individual Defendants (Juan Perez) as the 40/40 Club's CEO[5] (Dkt. No. 42 at 29), and the 40/40 Club's liquor license, which lists the Individual Defendants as principals (*id.* at 32). As Defendants explained, that does not rebut the direct evidence discussed above. (*See* Dkt. No. 60 at 25-26.) *See, e.g.*, *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (being "president of Dragon and a shareholder" is "too attenuated to establish a sufficiently direct financial interest"); *Monte Limar Sports Bar*, 2017 WL 933079, at *3 ("status as an officer, director, shareholder or principal . . . do[es] not permit the Court to infer that [individual defendants]" are liable); *Joe Hand Promotions, Inc. v. Alvarado*, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011) (finding on summary judgement that "[t]he Alvarados' names appearing on the liquor license is insufficient to subject them to liability").

The Individual Defendants are entitled to summary judgment on this additional, independent basis.

## CONCLUSION

The Court should grant Defendants' motion for summary judgment.

---

[4] As the office manager for the 40/40 Club explained, Perez is listed as the CEO "only for administrative and recordkeeping purposes." (Dkt. No. 61 at 1 ¶ 3.) And he "has never acted as the company's CEO," "has never had any managerial responsibility at the 40/40 Club," and "exercises no control over the company." (*Id.* at 1 ¶ 4.) And those facts are undisputed.

[5] G&G does not contend that Santini ever held any position—even a non-functional position—at the 40/40 Club (which is defined to include Twenty Ones, Inc.).

10

| | |
|---|---|
| Dated: September 27, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | |
| | /s/ Alex Spiro |
| | Alex Spiro |
| | Paul B. Maslo |
| | 51 Madison Avenue, 22nd Floor |
| | New York, NY 10010 |
| | Telephone: (212) 849-7000 |
| | alexspiro@quinnemanuel.com |
| | paulmaslo@quinnemanuel.com |
| | |
| | *Attorneys for Defendants* |