UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br><br>                              Plaintiff,<br><br>                    -v.-<br><br>JUAN PEREZ, *individually and doing business as 40/40 Club*, KRYSTIAN SANTINI, *individually and doing business as 40/40 Club*, and TWENTY ONES INCORPORATED, *an unknown business entity doing business as 40/40 Club*,<br><br>                              Defendants. | 21 Civ. 6210 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

On November 2, 2019, the 40/40 Club aired a boxing match between Saul "Canelo" Álvarez and Sergey Kovalev (the "Fight") without paying Plaintiff G & G Closed Circuit Events, LLC a $2,800 sublicensing fee.  In an Opinion and Order dated January 31, 2023, the Court granted Defendants' motion for summary judgment because a third party, and not Plaintiff, held the proprietary rights in the Fight at the time this case was filed in July 2021.  Plaintiff now seeks reconsideration of that decision.  Because Plaintiff still fails to offer a plausible theory as to how its rights in the Fight were preserved through the date it filed this lawsuit, the Court denies its motion.

## BACKGROUND[1]

### A.    Factual Background

The Court assumes familiarity with the facts and procedural history of this case, which are recounted at length in its summary judgment opinion.  *See generally G & G Closed Circuit Events, LLC* v. *Perez*, No. 21 Civ. 6210 (KPF), 2023 WL 1380314 (S.D.N.Y. Jan. 31, 2023).  It briefly revisits only the facts pertinent to the instant motion.

This case turns on the contractual relationship between Plaintiff, a distributor of sports and entertainment programming, and non-party entertainment producer DAZN.  In 2019, Plaintiff and DAZN executed a master services agreement (the "2019 MSA") and subsequent statement of work ("SOW 4"), which granted Plaintiff the exclusive authority to sublicense broadcasting rights to the Fight in the United States.  *Perez*, 2023 WL 1380314, at *2, 6.

---

[1]    The Court adopts the naming and citation conventions defined in its January 31, 2023 Opinion and Order granting summary judgment to Defendants.  *G & G Closed Circuit Events, LLC* v. *Perez*, No. 21 Civ. 6210 (KPF), 2023 WL 1380314 (S.D.N.Y. Jan. 31, 2023).  The Court draws facts from the parties' submissions in connection with their summary judgment motions (Dkt. #40, 47) and the instant motions (Dkt. #69, 72), including the 2019 Master Service Agreement and its exhibits (Dkt. #53-5 (the "2019 MSA")) and Statement of Work 4 (Dkt. #53-6 ("SOW 4")); and the 2020 Master Service Agreement and its exhibits (Dkt. #53-7 (the "2020 MSA")).

Additionally, the Court considers the complaints in *G & G Closed Circuit Events, LLC* v. *Mesa*, No. 20 Civ. 470 (JAS) (D. Ariz.) (Dkt. #72-3 ("*Mesa* Compl.")), and *J & J Sports Productions Inc.* v. *Vergara*, No. 19 Civ. 2382 (FB) (VMS) (E.D.N.Y.) (Dkt. #72-2 ("*Vergara* Compl.")), of which Plaintiff moved the Court to take judicial notice.  (Dkt. #72).  "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Glob. Network Comm'cns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998)); *see also* Fed. R. Evid. 201(b).

For ease of reference, the Court refers to Plaintiff's brief in support of its motion to amend the judgment as "Pl. Recon. Br." (Dkt. #70); to Defendants' brief in opposition as "Def. Recon. Opp." (Dkt. #73); and to Plaintiff's reply as "Pl. Recon. Reply" (Dkt. #74).

The 2019 MSA also granted Plaintiff the right, upon written notice to DAZN, to prosecute piracy of the Fight "for the period commencing on [May 1, 2019] and ending December 31, 2019 … unless extended in writing by mutual agreement of the parties." (2019 MSA § 10).  Upon the expiration of that period, "all rights licensed or otherwise transferred to [Plaintiff] … cease and revert to DAZN." (*Id.* § 8(d)).  In January 2020, Plaintiff and DAZN entered into a new master services agreement (the "2020 MSA"), which slightly modified the terms of their business relationship and "supersede[d] and terminate[d] all prior agreements between the parties hereto … with respect to the subject matter contained herein."  (2020 MSA § 16).

## B.   Procedural Background

On January 31, 2023, the Court issued an Opinion and Order granting Defendants' motion for summary judgment and denying Plaintiff's cross-motion for summary judgment.  (Dkt. #67).  In relevant part, the Court found that Plaintiff lacked statutory standing to challenge Defendants' allegedly unauthorized broadcast of the Fight because Plaintiff's proprietary rights in the Fight indisputably had reverted to DAZN by the time this suit was filed in July 2021.  *See Perez*, 2023 WL 1380314, at *6.  The Clerk of Court entered a final judgment for Defendants that same day.  (Dkt. #68).

On February 28, 2023, Plaintiff filed a motion to alter or amend the judgment and accompanying papers, as well as a motion requesting that the Court take judicial notice of court filings in other actions.  (Dkt. #69-72). Defendants filed a memorandum of law opposing Plaintiff's motion to alter or

amend the judgment on March 13, 2023.  (Dkt. #73).  Plaintiff filed a reply

memorandum in further support of its motion on March 20, 2023.  (Dkt. #74).

## DISCUSSION

### A.    Applicable Law

Pursuant to Federal Rule of Civil Procedure 59(e), within 28 days of an

entry of judgment, a party may file "[a] motion to alter or amend a judgment."

Fed. R. Civ. P. 59(e).  Similarly, Local Rule 6.3 permits parties to, within

fourteen days of a court's order, file "a notice of motion for reconsideration or

reargument" of that motion.  Local Civ. R. 6.3.  "The standards set forth in

both Fed. R. Civ. P. 59(e) and Local Rule 6.3 are identical."  *Skorupska* v. *525*

*W. 52 Prop. Owner LLC*, No. 20 Civ. 2381 (KPF), 2022 WL 17039035, at *1

(S.D.N.Y. Nov. 17, 2022) (quoting *In re N.Y. Comm. Bancorp, Inc., Sec. Litig.*, 244

F.R.D. 156, 159 (E.D.N.Y. 2007)).

"The decision to grant or deny a motion for reconsideration is within the

sound discretion of the district court."  *In re Optimal U.S. Litig.*, 813 F. Supp. 2d

383, 387 n.6 (S.D.N.Y. 2011) (quoting *Patterson* v. *United States*, No. 04 Civ.

3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)).

Reconsideration "is an extraordinary remedy to be employed sparingly in the

interests of finality and conservation of scarce judicial resources.'" *Tears* v. *Bos.*

*Sci. Corp.*, No. 17 Civ. 9793 (AJN), 2019 WL 2866847, at *1 (S.D.N.Y. July 3,

2019) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613,

614 (S.D.N.Y. 2001)).  It is appropriate only upon a showing of (i) an

intervening change in controlling law, (ii) newly-available evidence, or (iii) the

need to correct a clear error or prevent manifest injustice.  *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).

Importantly, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'"  *Analytical Survs., Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp.* v. *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).  As such, courts generally deny reconsideration requests where the movant fails to "demonstrate[] that the Court overlooked controlling law or factual matters that had been previously put before it."  *Celli* v. *N.Y. Dep't of Educ.*, No. 21 Civ. 10455 (LTS), 2022 WL 292916, *2 (S.D.N.Y. Feb. 1, 2022) (internal quotation marks omitted); *see also Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (explaining that the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

## B.   Reconsideration Is Not Necessary to Correct Clear Error or Prevent Manifest Injustice

Only those persons or entities with proprietary rights in a wire, radio, or satellite transmission may sue under federal law to remedy its unauthorized broadcast.  *See* 47 U.S.C. §§ 553, 605.  The Court previously determined that Plaintiff lacked statutory standing to bring this action because its proprietary rights in the Fight had reverted to DAZN long before this suit was filed in July 2021.  *See Perez*, 2023 WL 1380314, at *6-8.  It reasoned that even accepting Plaintiff's position that SOW 4 constituted a written extension of the 2019

5

MSA's expiration date, at most that extension was through January 30, 2020, the latest date contemplated by SOW 4. *Id.* at *7. Plaintiff now asks the Court to reconsider this conclusion, arguing that the original Opinion (i) overlooked the views of an Arizona district court as expressed in *G & G Closed Circuit Events, LLC* v. *Mesa*, No. 20 Civ. 470 (TUC) (JAS), 2023 WL 399795 (Jan. 25, 2023), and (ii) did not properly consider two provisions of the relevant contracts. (Pl. Recon. Br. 3-13). Plaintiff does not ask the Court to grant summary judgment in its favor. Instead, it invites the Court to find that the 2019 MSA's termination date is a fact issue not amenable for resolution at this stage in the litigation. (*Id.* at 2-3).

Much of Plaintiff's briefing either raises new arguments for the first time or rehashes arguments the Court has already rejected. Neither strategy is appropriate on a Rule 59(e) motion. *Tonga Partners, L.P.*, 684 F.3d at 52 (explaining that reconsideration motions are "not a vehicle for relitigating old issues [or] presenting the case under new theories"); *see also MJAC Consulting, Inc.* v. *Barrett*, No. 04 Civ. 6078 (WHP), 2006 WL 2051129, at *3 (S.D.N.Y. July 24, 2006) (cautioning that reconsideration motions are "not an invitation to parties to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories" (internal quotation omitted)). The Court nonetheless addresses the totality of Plaintiff's arguments to eliminate any doubt as to the correctness of its original Opinion.

### 1. The Court Is Not Persuaded by Plaintiff's Proffered New Authority

Plaintiff suggests that had the Court considered *Mesa,* an out-of-district opinion issued approximately one week before the Court's summary judgment Opinion, it would have reached a different conclusion as to Plaintiff's statutory standing. (Pl. Recon. Br. 3-4, 8-11). G & G filed *Mesa* in October 2020, and in that case alleged that an Arizona nightclub broadcast the November 2, 2019 Álvarez/Kovalev match in violation of the same federal anti-piracy laws at issue in this suit. (*See generally Mesa* Compl.). The parties in *Mesa* made similar standing arguments to those made by the parties in the instant suit, and the *Mesa* court ultimately denied summary judgment on the issue of G & G's statutory standing:

> Club 520 argues that G & G has no standing because G & G's rights to enforce piracy claims expired on December 31, 2019 — before the case was filed. G & G, in response, points to SOW 4, effective on October 1, 2019. SOW 4 expressly incorporates all terms and conditions of the [2019] MSA and if there is any incorporation or contradiction between SOW 4 and the [2019] MSA, the SOW prevails. SOW 4 states the terms of the broadcasting of three boxing events, including the boxing match at issue in this case. Notably, SOW 4 states that it also applies to any additional boxing events up until January 30, 2020.
>
> SOW 4 expressly allows G & G to offer a broadcast for DAZN boxing matches prior to January 30, 2020. The SOW additionally provides a rate card for additional events until January 30, 2020. The date in SOW 4 is notably in conflict with the termination date of December 31, 2019 reflected in Section 10 of the [2019] MSA. SOW 4 extends the terms of the [2019] MSA; SOW 4 is a mutual agreement in writing that extended the termination of the original [2019] MSA. Accordingly,

> there is an issue of fact as to the expiration of the [2019]
> MSA, and summary judgment is denied as to this issue.

*Mesa*, 2023 WL 399795, at *2-3.

As it happens, this Court followed *Mesa*'s logic, and then took the next logical step. In line with *Mesa*, the Court accepted that SOW 4 may have extended the 2019 MSA beyond its original December 31, 2019 termination date. *Perez*, 2023 WL 1380314, at *7. *Mesa*'s analysis ended there, but the Court probed further, explaining that the latest date contemplated by SOW 4 is January 30, 2020. (*See* SOW 4 at 1 ("Additional boxing events scheduled to be broadcasted on DAZN prior to January 30th, 2020 … may be offered by G & G as an 'Event Package' upon DAZN's approval.")). As such, the Court concluded that any dispute about the 2019 MSA's termination date would be immaterial, because the 2019 MSA expired — and Plaintiff's rights in the Fight reverted to DAZN — long before Plaintiff filed this suit. *Perez*, 2023 WL 1380314, at *7.

*Mesa* seems to recognize the significance of the January 30, 2020 date. *See Mesa*, 2023 WL 399795, at *2 ("SOW 4 expressly allows G & G to offer a broadcast for DAZN boxing matches prior to January 30, 2020."). But it offers no explanation for how a contract that preserved G & G's rights in the Fight through January 30, 2020, afforded G & G statutory standing in October 2020, when *Mesa* was filed (much less in July 2021, when this suit was filed). The Court recognizes that its conclusion is at odds with *Mesa*. But lacking any insight into that court's reasoning, it is not persuaded by it.

**2.    The Contractual Provisions Now Cited by Plaintiff Do Not Create a Triable Issue as to the Status of Plaintiff's Proprietary Rights in the Fight in July 2021**

Picking up where *Mesa* left off, Plaintiff offers its own theory of how SOW 4 extended its rights in the Fight through July 2021.  It identifies two contractual provisions that, it maintains, the Court did not properly consider: (i) the provision of SOW 4 that incorporates the 2019 MSA by reference and specifies that "[i]f there is any inconsistency or contradiction between the MSA and the SOW, the terms of this SOW shall prevail" (Pl. Recon. Br. 5 (quoting SOW 4 at 1)), and (ii) Section 8(a) of the 2019 MSA, which affords Plaintiff the right to "identify *and thereafter* prosecute" piracy of events covered by the contracts (*id.* (quoting 2019 MSA ¶ 8(a) (emphasis added))).  Plaintiff argues for the first time in this litigation that to allow Plaintiff's rights in the Fight to revert to DAZN would effectively nullify the latter provision, because Plaintiff would have had only a short time to sue for piracy.  (*Id.* at 5-6).[2]  Plaintiff then proposes a different date for the expiration of its proprietary rights in the covered events: the termination of the three-year statute of limitations.  (*Id.* at 6-7).

The Court acknowledges the creativity of Plaintiff's theory.  That theory, however, is simply not reconcilable with the plain text of the 2019 MSA's reversion-of-rights provision, which states:

---

[2]    The Court finds it noteworthy that Plaintiff made no argument as to the import of Section 8(a) of the 2019 MSA in any of the three briefs it submitted in connection with the parties' cross-motions for summary judgment, given the centrality of that provision to its current theory of the case.  (*See* Pl. Recon. Br. 5 (acknowledging that it previously "did not address the Anti-Piracy provisions in detail")).

> Upon expiration or termination of this Agreement, all rights licensed or otherwise transferred to [Plaintiff] hereunder, including copyright, shall cease and revert to DAZN, and [Plaintiff] agrees to execute all instruments necessary and desirable to revert said rights to DAZN.

(2019 MSA § 8(d)).  For Plaintiff's theory to hold water, Section 8(d) would have to instead read:

> Upon expiration or termination of this Agreement, **the** rights licensed or otherwise transferred to [Plaintiff] hereunder, **except for anti-piracy enforcement rights**, shall cease and revert to DAZN, and [Plaintiff] agrees to execute all instruments necessary and desirable to revert said rights to DAZN.  **Plaintiff shall retain the right to bring anti-piracy suits related to the covered events for the entirety of the relevant limitations period.**

The Court declines Plaintiff's invitation to rewrite the contract in this way. Section 8(d) is clear; "all" of Plaintiff's contractual rights, including its anti-piracy enforcement rights, revert to DAZN upon the 2019 MSA's expiration or termination.  It does not divide the rights by type and prescribe different expiration dates for each.  Put simply, the 2019 MSA ties Plaintiff's piracy enforcement rights to the expiration of the contract, not the expiration of the limitations period.

This commonsense reading is consistent with Section 8(a)'s promise that Plaintiff may "identify and thereafter prosecute" piracy.  (*See* 2019 MSA ¶ 8(a)). The word "thereafter" preserves Plaintiff's enforcement rights for a period of time following each covered event.  *See Thereafter*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[a]fterward; later").  But that period is not limitless; it is defined in Section 8(d) as the duration of the 2019 MSA.  *See Law Debenture*

*Trust Co. of N.Y.* v. *Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)

(explaining that contractual provisions are "read in the context of the entire

agreement" (internal quotation omitted)).  Upon the 2019 MSA's expiration,

DAZN became the sole rightsholder over the covered events.

 Contrary to Plaintiff's arguments for reconsideration, this plain-text

reading does not result in absurdity.  Nothing in the text of the 2019 MSA or

SOW 4 deprived Plaintiff of its ability to bring an anti-piracy action for any of

the covered events; they simply limited Plaintiff's timeframe to do so.

Considering these provisions in the context of the instant case, the Court

observes that Plaintiff could have brought this suit in November or December

2019 or, accepting that SOW 4 extended the 2019 MSA's termination date, in

January 2020.  Yet it waited until July 2021 to file the Complaint.  Two or

three months is admittedly not a long time to investigate and initiate a lawsuit,

but it is the timeframe upon which the parties agreed.  And for other events

covered by the 2019 MSA, Plaintiff had much more time to sue; the contract

covers events occurring as early as May 4, 2019.  (*See* SOW 1).  Plaintiff offers

no authority for its contention that it is *per se* absurd for a contract to assign

enforcement rights for only a short period.  To so hold would beg the question

of exactly how much time is enough for an enforcement right to be meaningful.

Is three months enough?  Four?  Given the straightforwardness of the

contractual text, the Court will not wade into those murky waters, as the

parties to the MSA already did so in negotiating the contracts.  The truer

absurdity would be to read the reversion provision out of the 2019 MSA and thereby grant Plaintiff a benefit (indeed, a windfall) for which it did not bargain.

The only way for Plaintiff to succeed with its standing arguments, then, is if SOW 4 modified the reversion provision of the 2019 MSA.  The terms of SOW 4 prevail "[i]f there is any inconsistency or contradiction between the MSA and the SOW."  (SOW 4 at 1)).  As such, if SOW 4 extended Plaintiff's rights in the Fight, either by making them coterminous with the limitations period or otherwise, that modification would control.  But Plaintiff does not identify, nor could the Court with its best efforts find, any such language in SOW 4.  SOW 4 extends the 2019 MSA's terms to the November 2, 2019 Álvarez/Kovalev Fight, a November 9, 2019 fight, and a December 7, 2019 fight, and allows Plaintiff to request rights in "[a]dditional boxing events scheduled to be broadcasted on DAZN prior to January 30th, 2020."  (SOW 4 at 1).  Notably, it makes no mention of the duration of Plaintiff's anti-piracy enforcement rights, the statute of limitations, or any contractual relationship between Plaintiff and DAZN after January 30, 2020.  Plaintiff acknowledges as much, conceding that "the contracts [them]sel[ves] do not make [its statute-of-limitations theory] express." (Pl. Recon. Br. 6).  The Court is generous in accepting *arguendo* that SOW 4's reference to *potential* dealings between the parties through January 30, 2020, extended the entirely of the 2019 MSA through that date.  But its generosity is bound by the text, and can extend no further.

As a last-ditch effort to establish its standing, Plaintiff offers a variation on an extratextual argument it made previously.  At summary judgment,

12

Plaintiff argued that it and DAZN's course of conduct extended the 2019 MSA's expiration date. *Perez*, 2023 WL 1380314, at *7. The Court found this argument unsupported by the record because Plaintiff failed to identify even a single instance of such conduct. *Id.* Plaintiff now argues that if DAZN had objected to Plaintiff bringing this action, DAZN Vice President Sunjay Matthews would have said so in his declaration. (Pl. Recon. Br. 12). But a party cannot create an issue of fact based on a counterfactual. To defeat summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (citing Fed. R. Civ. P. 56(e)). Mr. Matthews's silence is simply not enough to create a fact issue as to the duration of the 2019 MSA.

Where contractual language, "viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement," is susceptible of only one reading, summary judgment is appropriate. *Compagnie Financiere de CIC et de L'Union Europeenne* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157-58 (2d Cir. 2002) (internal quotation omitted). Absent a plausible reading of the relevant contracts that extends Plaintiff's rights in the Fight beyond January 2020, the Court stands by its initial interpretation of the 2019 MSA and SOW 4.

**CONCLUSION**

The Court sees no reason to reconsider the reasoning or conclusion of its summary judgment opinion. Accordingly, Plaintiff's motion is DENIED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      May 23, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge